Grafton,  }
March 1, 1921. }

## GEORGE E. ADAMS v. JAMES H. STRAIN.

A mere accidental misstatement of the evidence by counsel in argument is not
ground for disturbing a verdict, if the trial is not thereby rendered unfair.

In trespass for assault and battery, the jury were properly instructed in substance
that if they found the assault was maliciously and wantonly committed, they
would apply a more liberal rule of damages in awarding compensation to the
plaintiff than they would if those elements did not exist.

In such case, the report of statements made by a person, not a witness, to the
effect that the plaintiff had slandered the defendant, though the report had
been communicated to the defendant, is not admissible in mitigation of dam-
ages in the absence of evidence that the slander was uttered by the plaintiff.

ACTION, of trespass for assault and battery. Trial by jury and
verdict for the plaintiff.

The defendant's exceptions to the argument of plaintiff's counsel,
and to the instructions of the court, together with the evidence
relevant thereto, are stated in the opinion. A bill of exceptions was
allowed at the January term, 1920, of the superior court by *Branch*, J.

*Nathaniel E. Martin, David F. Dudley*, and *Frank B. Clarke*, for the
plaintiff.

*Robert W. Upton* and *John H. Noonan*, for the defendant.

PLUMMER, J. In the course of the trial, the defendant presented
evidence as to statements made by a Miss Manion, wherein she
charged the plaintiff with having made certain slanderous remarks
about the defendant. The defendant testified relative to the absence
of Miss Manion. Comment was made respecting this testimony
by plaintiff's counsel in the following language to which exception
was taken: "Now let us see — they had no reason for doing it.
[Referring to the assault.] The story came, so they say, when a
woman named Manion, after Mr. Adams went away, told them he
had talked against the house. Well, she isn't here. They say the
train broke down on the way down — maybe it did and maybe it
didn't. I don't know how that is." The complaint made against
this argument is that counsel stated that the defendant claimed the
absence of the witness was occasioned by the default of a train,
whereas the testimony of the defendant in substance appears to be

that she attempted to come by automobile, but could not get through. The error in the statement was not of such a character as to lead to the conclusion that it was intentional; it was probably "a mere misrecollection or accidental misstatement of the evidence," which "does not render the trial unfair as matter of law." *State* v. *Wren,* 77 N. H. 361, 364; *Benoit* v. *Perkins,* 79 N. H. 11, 19.

The statement of counsel, that the defendant claimed the absence of a witness was caused by a train, instead of an automobile, would not seem to be materially prejudicial to the defendant's case. It cannot be said that the remarks were "so inconsistent with legal fairness of trial as to make it a matter of law that there should be a new trial." *Aldrich* v. *Railroad,* 67 N. H. 380, 382; *Gault* v. *Railroad,* 63 N. H. 356, 360, 361; *Gilman* v. *Laconia,* 71 N. H. 212; *Guertin* v. *Hudson,* 71 N. H. 505.

The court instructed the jury in substance that, if they found the assault was maliciously and wantonly committed, they would apply a more liberal rule of damages in awarding compensation to the plaintiff, than they would if those elements did not exist. An exception was taken by the defendant to this instruction. The law of the state relative to the assessment of damages for a malicious and wanton assault was clearly and correctly stated by the court. But it has been so fully discussed, and is so well settled and understood, that an extended consideration of it here would be neither instructive nor useful. *Bixby* v. *Dunlap,* 56 N. H. 456; *Kimball* v. *Holmes,* 60 N. H. 163; *Cooper* v. *Hopkins,* 70 N. H. 271; *Cohn* v. *Saidel,* 71 N. H. 558.

It was the claim of the defendant that the plaintiff had made slanderous statements about him. The court, after stating to the jury that, if the plaintiff actually slandered the defendant, they could consider that in assessing damages, instructed them as follows: "The mere reports of such slanders coming to the ears of the defendant would not justify him in taking action against the plaintiff or serve to mitigate damages unless those reports are shown to have been true. So here the statements attributed to Miss Manion are not evidence of the truth of the charge contained in those statements. If you find that the plaintiff did slander the defendant, you must place it upon other evidence than the mere statements of Miss Manion; her statements as reported here are mere hearsay and the law does not recognize hearsay evidence as a legal basis upon which to base a verdict." The exceptions taken by the defendant to these instructions cannot be sustained. Subject to exceptions witnesses for the defendant were permitted to testify that Miss Manion had told them that the plain-

tiff had made slanderous statements to her about the defendant. This testimony was hearsay so far as the issue of what the plaintiff had said is concerned; and evidence of what the defendant had been told was not admissible to lessen the recoverable damages. His mental state, and the causes which produced it, are immaterial upon this issue.

If *Friel* v. *Plumer*, 69 N. H. 498, and *McBride* v *Huckins*, 76 N. H. 206, are inconsistent with this view, they are in conflict with the well established rule in this jurisdiction that punitive damages are not recoverable. The court's purpose in giving the above instructions was to prevent the jury from giving this illegal and improper testimony any consideration or weight in arriving at a verdict. The instructions were not only proper, but were required to guide the jury in their deliberations, so that the verdict returned by them might not be based upon unlawful evidence.

It is contended by the defendant that his evidence showed that when the plaintiff was accused of making the slanderous statements his conduct demonstrated his guilt, although he denied it, and that the instructions of the court, above quoted, in effect prevented the jury from finding that the plaintiff by his conduct admitted he made the statements. There is nothing in the charge that warrants such a contention. If the plaintiff's conduct, as shown by the evidence, indicated that he made the defamatory statements attributed to him by the defendant, the jury were at liberty to so find. The only restriction imposed upon the jury was that they should not give consideration to the statements of witnesses who testified to what some one told them.

*Exceptions overruled.*

All concurred.